UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNION FIRST MARKET BANK,<br><br>Plaintiff,<br><br>v.<br><br>DONALD A. BLY, II,<br><br>Defendant. | Civil Action No. 3:13–CV–598 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on three motions filed by Plaintiff and Counterclaim Defendant Union First Market Bank ("UFMB"): (1) a Motion for Summary Judgment (ECF No. 44); (2) a Motion to Exclude Testimony of Robert E. Ruloff and Strike the Ruloff Declaration ("Motion to Exclude") (ECF No. 58); and (3) a Motion to Compel Documents and Things Related to Proposed Testimony of Robert E. Ruloff ("Motion to Compel") (ECF No. 60).

For the reasons below, the Court resolves each of these motions as follows: the Motion for Summary Judgment is hereby GRANTED, with respect to Count One of UFMB's Complaint, and GRANTED IN PART, with respect to Count Two of UFMB's Complaint only to the extent that UFMB did not owe any fiduciary duties to Bly regarding the May 7, 2011, promissory note ("Note") at issue, and DENIED IN PART, with respect to Bly's Counterclaim. The Motion to Exclude is hereby DENIED. The Motion to Compel is hereby GRANTED IN PART and DENIED IN PART. To the extent that they have not already done so, the subpoenaed parties, Robert E. Ruloff ("Ruloff"), in his individual capacity, Shuttleworth,

Ruloff, Swain, Haddad & Morecock, P.C., and DurretteCrump, PLC are DIRECTED to produce any documents which have been admitted as being responsive, but not privileged, as well as any documents memorializing the disputed meeting between Plaintiff, Michael Williams, and Robert E. Ruloff.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Motion for Summary Judgment[1]

On March 12, 2003, UFMB and Bly entered into an investment management agency agreement ("IMAA") pertaining to an investment account ("Investment Account") owned by Bly. Michael Williams ("Williams"), then president of UFMB's Trust and Investment Management Division, signed the IMAA on behalf of UFMB. The IMAA provides, in part:

> I [Bly] request that [UFMB] open an Investment Management Agency Account in my name into which you will receive assets subject to the following guidelines[.] . . .
>
> You are to retain my securities and collect the income therefrom and the proceeds of those securities called, sold or matured. You are to invest the daily cash balances in a short-term money-market account of your choice. . . .
>
> You are to provide investment management for this account and your discretion with respect to the investment and reinvestment of property held therein as though you were the owner of such property. Your authorization extends, though is not limited to the sale and purchase of securities, bonds, mutual funds, subscription rights, other rights of similar nature and participation in corporate reorganizations, except as I may otherwise direct you in writing. . . .
>
> As with any investment of this account, such purchase should be in keeping with our investment objectives and risk tolerance. . . .
>
> At least quarterly, you will send me a detailed listing of all transactions in this account and a listing of assets. . . .
>
> In the management of my account you may employ such Agents as you deem advisable, and you may incur such administrative expenses on my behalf as

[1] Unless otherwise indicated, these material facts are undisputed by the Parties.

> is usual for an agent to incur with a similar account, charging the expenses to my account. . . .

(Countercl. Ex. A, at 1). The IMAA also provides that "[n]othing contained in this agreement shall be construed to create a trust relationship. The relationship between [UFMB] and [Bly] shall strictly be that of agent and principal." (*Id.* at 2).

In or before 2006, Bly's uncle, Daniel Holland, approached Bly regarding an investment opportunity in a proposed Sports Complex property in Virginia Beach, Virginia ("Sports Complex"). Neither the Sports Complex nor Bly's interest therein was ever an asset that was deposited into the Investment Account. No written or oral agreement exists between UFMB and Bly by which UFMB agreed to provide investment management services, investment advice, or financial planning services as to any of Bly's assets held outside of the Investment Account. In order to provide funding for the Sports Complex, Bly executed a series of loans from UFMB, which were memorialized in several promissory notes, commercial pledge agreements, line of credit agreements, and consumer pledge agreements ("Bly Debt Instruments"). Each of the Bly Debt Instruments was signed by Bly and pledged Bly's Investment Account as collateral. In the very first commercial pledge agreement in which Bly designated the Investment Account as collateral, Bly represented and warranted to UFMB that he had "the full right, power and authority to enter into this Agreement and pledge the [Investment Account]." (*See* Countercl. Ex. C, at 1). Bly further represented and warranted that execution and delivery of the commercial pledge agreement would "not violate any . . . agreement governing [Bly] or to which [Bly] is a party." (*Id*.) Bly also agreed that he understood all terms of the agreement. (*Id*. at 5). The other Bly Debt Instruments contain similar representations indicating that Bly was acting under his own authority and with full understanding of each instrument's consequences.

The Bly Debt Instruments provide distinct duties for UFMB as lender with respect to the Investment Account as collateral:

> LIMITATIONS ON OBLIGATIONS OF LENDER. Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in its value. In particular, but without limitation, Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (B) preservation of rights against parties to the Collateral or against third persons, (C) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (D) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

(Countercl. Ex. C, at 2; *see also id*. at Ex. E, at 2; Ex. G at 2). The most recent of the Bly Debt Instruments was the Note under which Bly agreed to repay UFMB in the principal amount of $1,995,555.56 with a contractual default interest rate of 18%. The Note matured on August 7, 2011. As of April 30, 2013, the Note became due according to its terms. Bly has made no payments on the Note and the principal in the amount is due and owing as is interest after default.

The Parties dispute whether Thomas Winston ("Winston"), a UFMB representative from its commercial loan division, promised that UFMB, and perhaps another investor by the name of Markel, would provide additional and permanent financing for the construction of the Sports Complex through loans and/or money from additional investors. The Parties also dispute whether UFMB failed to find other investors to fund the anticipated $18,000,000.00 in construction costs for the Sports Complex. Lastly, the Parties dispute whether Williams transferred funds in the amount of $2,500,000.00 out of the Investment Account to cover expenses regarding the Sports Complex.

UFMB filed the instant action against Bly on May 24, 2013. In Count One of the Complaint, UFMB alleges that Bly breached the terms of the Note and seeks $1,995,555.56 plus interest from April 30, 2013 at the default rate of 18% per annum based on a year of 360 days. In Count Two, UFMB seeks declaratory relief stating (a) that UFMB does not owe Bly any fiduciary duties or obligations with respect or in any way related to the Note; (b) that UFMB did not breach or violate any duties or obligations to Bly; and (c) that Bly has not been damaged in any way by UFMB's alleged breach or violation of any duties or obligations to Bly. Finally, UFMB also seeks its reasonable attorney's fees and costs and any such relief as the Court deems proper. Bly, in turn, filed a Counterclaim on June 19, 2013, alleging that UFMB breached the IMAA. Bly seeks direct and consequential damages in the amount of $12,000,000.00.

UFMB filed this Motion for Summary Judgment on December 11, 2013. Bly filed an Opposition on December 26, 2013. UFMB filed its Reply on January 3, 2014. A hearing on the matter was held on January 28, 2014 and a bench trial is scheduled for February 11, 2014.

**B. Motions to Exclude and Compel**

Bly is represented by Wyatt B. Durrette, Jr. of DurretteCrump, PLC. Bly was referred to DurretteCrump, PLC, by Ruloff of Shuttleworth, Ruloff, Swain, Haddad & Morecock, PC. In September 2013, Bly responded to UFMB's request for interrogatories by disclosing all persons with knowledge of the facts related to this action. Several potential fact witnesses were disclosed; Ruloff was not among them. The interrogatories did, however, indicate that Ruloff was present at a meeting between Bly and Williams in August 2011. Bly now argues that his recollection of the date of this meeting was incorrect and that "[t]he parties have

since identified the actual date of this meeting as May 30, 2012." (Def.'s Mem. Opp'n Mot. Exclude 3).

On December 5, 2013, Bly deposed Williams, who disclaimed any involvement in the investments at issue in this case. Because Ruloff's recollection of the representations made by Williams in the May 2012 meeting was dramatically different than Williams's testimony during the deposition, Bly determined that Ruloff should be used as a fact witness. Accordingly, Bly served a supplemental interrogatory, disclosing Ruloff as a fact witness, on December 11, 2013.

In response, UFMB served subpoenas *duces tecum* on Ruloff; Shuttleworth, Ruloff Swain, Haddad & Morecock, PC; and DurretteCrump, PLC. Each of the subpoenas requested any records related to a June 2012 meeting, an August 2011 meeting, or any other meeting between Bly, counsel, and any employee of UFMB (including Williams). Responses to the subpoenas were due on December 31, 2013 at 10:00 a.m.

On December 26, 2013, Bly filed an Opposition to UFMB's Motion for Summary Judgment and attached a declaration from Ruloff attesting to his presence at, and the content of, the disputed meeting. On December 31, 2013, Bly served UFMB a document entitled "Objections and Responses to Subpoena to Produce Documents." This document stated Bly's objection to UFMB's subpoenas and asserted attorney-client privilege and work product doctrine regarding all the requested documents. The subpoenaed parties did not produce any documents, and did not serve a privilege log with their objection. On January 7, 2014, DurretteCrump, PLC, provided UFMB with a privilege log. UFMB was able to depose Ruloff on January 16, 2014. Pursuant to the Court's Pretrial Order (ECF No. 40)

discovery and the opportunity to conduct depositions ended on January 10, 2014. The instant Motions became ripe on January 21, 2014.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). However, if the court finds that there *is* a genuine issue of material fact, the motion must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation marks omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

A district court must "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v.*

*Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 at 249–50.

**B. Analysis**

1. UFMB's Obligation Under the Debt Instruments

"[W]here a business transaction is based on more than one document executed by the parties, the documents will be construed together to determine the intent of the parties." *Countryside Orthopaedics, PC v. Peyton*, 541 S.E.2d 279, 284-85 (Va. 2001) (quoting *Daugherty v. Diment,* 385 S.E.2d 572, 574 (Va. 1989)). "Where two papers are executed at the same time or contemporaneously between the same parties in reference to the same subject matter, they must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." *Id.* (quoting *Oliver Refining Co. v. Portsmouth Cotton Oil Refining Corp.,* 64 S.E. 56, 59 (Va. 1909)). However, "[w]hether contemporaneously executed separate agreements should be construed as a single integrated contract depends on the facts of each case." *Parr v. Alderwoods Grp., Inc.*, 604 S.E.2d 431, 435 (Va. 2004).

Bly contends that the IMAA and the Bly Debt Instruments form a single "transaction" or contract. However, even assuming that there is a single purpose for the relevant

contracts, it is highly implausible that the IMAA and Bly Debt Instruments, executed approximately three years apart, constitute a "single transaction" under Virginia law. Moreover, the Bly Debt Instruments cannot plausibly be considered "the functional equivalent of consent forms for the investment in the Sports Complex." (*See* Def.'s Mem. Opp'n Mot. Summ. J. 18). Lastly, there is no indication that the Bly Debt Instruments and the IMAA constitute an integrated contract because the IMAA and the Bly Debt Instruments are not dependent upon one another and the absence of any one of the agreements would not frustrate the purpose of the "transaction" as defined by Bly. *Parr*, 604 S.E.2d at 435.

In the absence of any relationship that ties the IMAA and Bly Debt Instruments together, UFMB is entitled to collect on the Note, which has matured and is due. Accordingly, summary judgment is GRANTED regarding Bly's repayment on the Note.

2. The Sports Complex and UFMB's Responsibility

a. The Scope of UFMB's Duty Under the IMAA

Under Virginia law, whether writing is ambiguous is a question of law and not fact. *Comstock Potomac Yard, L.C. v. Balfour Beatty Const., LLC*, No. 1:08-CV-894, 2009 WL 1076752, at *6 n.8 (E.D. Va. Apr. 20, 2009); *Westmoreland-LG&E Partners v. Virginia Elec. & Power Co.*, 486 S.E.2d 289, 294 (Va. 1997). "A contract must be construed as a whole to determine the parties' intent with respect to specific provisions." *Hooper v. Musolino,* 364 S.E.2d 207, 212 (Va. 1988). "Contracts are not rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement. Even though an agreement may have been drawn unartfully, the court must construe the language as written if its parts can be read together without conflict." *Westmoreland-LG&E Partners*, 486 S.E.2d at 294. Ambiguity exists where contractual

language could be construed in more than one way. *Id.* "Parol evidence of prior or contemporaneous oral negotiations are generally inadmissible to alter, contradict, or explain the terms of a written instrument provided the document is complete, unambiguous, and unconditional." *Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner,* 303 S.E.2d 894, 898 (Va. 1983); *see also Westmoreland-LG&E Partners*, 486 S.E.2d at 294.

Bly essentially asks the Court to interpret the term "investment management" without any context and without taking into account any of the language that qualifies UFMB's authority to invest the assets in the Investment Account. The IMAA, however, constrains the scope of UFMB's authority and duties in various ways. First, the IMAA ties the scope of UFMB's duties as Bly's agent solely to assets held in the Investment Account. (*See* Countercl. Ex. A, at 1). UFMB was to "provide investment management for [the Investment Account]" and exercise "discretion with respect to the investment and reinvestment of property held therein as though [UFMB] were the owner of such property." (*Id.*). Second, the IMAA further provides specific guidelines regarding how such assets were to be received into the account and managed. Third, as stated by Plaintiff, the investment strategy delineated in the IMAA refers exclusively to investments in various financial instruments such as securities, bonds, mutual funds, and cash. Specifically, the IMAA states:

> You are to retain my securities and collect the income therefrom and the proceeds of those securities called, sold or matured. You are to invest the daily cash balances in a short-term money-market account of your choice. . . . Your authorization extends, though is not limited to the sale and purchase of securities, bonds, mutual funds, subscription rights, other rights of similar nature and participation in corporate reorganizations, except as I may otherwise direct you in writing.

(*See id.*) This language indicates that the Parties did not anticipate that the assets in the Investment Account would be invested in real property such as the Sports Complex. The Court finds that the IMAA is unambiguous in its terms. As such, the Court declines to rely on extrinsic or parol evidence to interpret the meaning of the IMAA.

b. UFMB's Duties Regarding the Note and Bly Debt Instruments

Under Virginia law, a fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Fox v. Encounters Int'l*, 318 F. Supp. 2d 279, 289 (D. Md. 2002) (citing *Allen Realty Corp. v. Holbert,* 318 S.E.2d 592, 595 (Va. 1984)). A fiduciary is obligated to inform his principal about anything fact that may affect the principal's decision regarding whether or how to act. *Id.* In contrast, an agent has a narrower "duty to act in accordance with the express and implied terms of any contract between the agent and the principal." Restatement (Third) of Agency § 8.07 (2006); *see Int'l Fid. Ins. Co. v. W. Virginia Water Auth.*, No. 7:11-CV-00441, 2012 WL 2357368, *4 (W.D. Va. June 20, 2012) (constraining the fiduciary relationship between an agent and principal under an escrow agreement); *Horne v. Holley,* 188 S.E. 169, 172 (Va. 1936) ("[A]n agent is a fiduciary with respect to the matters within the scope of his agency.").

Virginia courts recognize fiduciary relationships between an agent and principal. *See Cincinnati Ins. Co. v. Ruch*, 940 F. Supp. 2d 338, 346-47 (E.D. Va. 2013). In certain circumstances, a breach of a contract action may sound in contract and tort law. *See Foreign Mission Bd. of S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991). However, where there is a contractual relationship without evidence that the parties intended to

create a fiduciary relationship, the Court may not manufacture one. *See HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.*, 737 F. Supp. 2d 533, 549 (E.D. Va. 2010) ("A party may bring a claim for breach of fiduciary duty only where the duty breached is a common law duty and 'not one existing between the parties solely by virtue of the contract.'").

The IMAA clearly delineates UFMB's contractual authority and duties. The IMAA states that UFMB was to "provide investment management for this account . . . . [n]othing contained in this agreement shall be construed to create a trust relationship. . . . [and the] relationship between [UFMB] and [Bly] shall strictly be that of agent and principal." (Countercl. Ex. A, at 1). Bly has not brought a separate claim alleging a breach of some fiduciary duty beyond the contract itself. Because the terms of the IMAA clearly disclaims any trust relationship between UFMB and Bly, and because Bly is not alleging any related tort claims, the only duties owed by UFMB to Bly are contractual in nature.

In light of the aforementioned holding that the IMAA and the Bly Debt Instruments do not constitute a single contract, and with the absence of a trust relationship, the Note is separate and distinct from the IMAA. Moreover, the plain language of the IMAA did not impose upon UFMB any obligation or authority to prevent Bly from encumbering the assets in the Investment Account in pursuit of his investment in the Sports Complex. As such, UFMB cannot be held liable for Bly's decision to execute the Bly Debt Instruments to fund the Sports Complex. Accordingly, summary judgment is GRANTED regarding Count II of UFMB's Complaint as it relates to UFMB's fiduciary duties regarding the Note and other Bly Debt Instruments.

c. <u>UFMB's Possible Breach of the IMAA Through Direct Investment into the Sports Complex</u>

i. <u>Rule 36 Admissions</u>

Bly alleges that UFMB breached the IMAA when it used assets in the Investment Account to help fund the Sports Complex. Pursuant to this theory, Bly asserts that Williams unilaterally spent Investment Account funds on the Sports Complex, without his knowledge, and only informed him of the outlay of Investment Account funds after the fact. UFMB argues that Bly now attempts to contradict his own binding admissions that (1) the Sports Complex was not an asset held in the Investment Account and (2) no written or oral agreement exists between UFMB and Bly by which UFMB agreed to provide investment management services, advice, or financial planning services with respect to assets held outside of the Investment Account. UFMB contends that it had a right to rely on these admissions and that the Court should hold Bly to his prior admissions.

The function of Federal Rule of Civil Procedure 36 is to define and limit the matters in controversy between parties. *Ameribanc Sav. Banks, F.S.B. v. Resolution Trust Corp.*, 858 F. Supp. 576, 580 (E.D. Va. 1994). Bly's admissions, however, are distinguishable from the proposition on which UFMB attempts to rely. While UFMB's arguments accurately describe Bly's obligations under Federal Rule of Civil Procedure 36, it is not duplicitous for Bly to maintain that UFMB still had some duty regarding its use of funds directly from the Investment Account. As UFMB repeatedly states, the IMAA explicitly and exclusively pertains to funds in the Investment Account.

ii. <u>Declaration Evidencing a Dispute of Material Fact</u>

"A movant may defeat a motion for summary judgment by demonstrating that a genuine issue of material fact exists by referencing matters in the record, including depositions and affidavits." *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). An affidavit or declaration in opposition of a motion for summary judgment "must

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As such, Bly's declaration must not be conclusory or based on hearsay. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996). There is, however, no rule against self-serving affidavits or declarations. *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195, 198 (4th Cir. 2011)

Bly asserts that Williams and, thus, UFMB spent $2,500,000.00 in Investment Account assets on the Sports Complex on their own initiative and without Bly's prior consent. (Bly Mem. Opp'n Mot. Summ. J. 4, 5). Specifically, Bly declared that "[o]n several occasions in 2008 and 2009, Williams informed him that the Sports Complex needed additional funding and that he was transferring funds out of [Bly's] account to cover expenses." (Bly Decl. ¶ 10). Bly presents further evidence in the form of an declaration from Ruloff. Ruloff states that he was present at a meeting where Williams stated that he approved "draws" from Bly's investment account in order to fund the Sports Complex. (Ruloff Decl. ¶ 15).[2]

While Bly's declaration contains hearsay in the form of statements from Williams, these statements are party admissions as Williams was an employee of UFMB at the time he communicated with Bly. *See Sweeney v. Marc Global, Inc.*, No. CIV.3:06-CV-182, 2008 WL 313618, at *3 (W.D.N.C. Feb. 4, 2008); *see also* Fed. R. Evid. 801(d)(2)(D). Through his own declaration, Bly successfully establishes a dispute as to a material fact regarding whether UFMB's outlays from the Investment Account were improper in some way in light of the clear limitations on UFMB's authority to invest assets in the Investment Account under the

[2] The admissibility of Ruloff's declaration is discussed *infra*.

IMAA. Neither party has produced any concrete evidence in the form of account statements showing that such outlays did or did not take place. As such, summary judgment on Bly's Counterclaim is not appropriate.

## III. MOTION TO EXCLUDE

UFMB argues that Ruloff's testimony should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1). Specifically, UFMB argues that Bly deliberately attempted to delay disclosure of Ruloff as a potential fact witness, constituting a violation of his obligations under Rule 26. UFMB further argues that it was surprised by the belated disclosure and that Bly cannot argue that the belated disclosure was substantially justified or harmless.

Federal Rule of Civil Procedure 16 authorizes sanctions for a party's "fail[ure] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). A court may issue sanctions including, but not limited to, those enumerated in Rule 37(b)(2)(A). *Id*. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The advisory committee notes described this as an "automatic sanction," but lesser sanctions are authorized on motion and after giving an opportunity to be heard. *Id*. & 1993 Amendment advisory committee's notes.

Here, Ruloff was disclosed as a fact witness prior to any discovery deadlines required by the Court's pretrial order. Bly represents that he did not feel it necessary to name Ruloff as a material witness until the 2013 deposition where Williams first claimed that he had no involvement in Bly's investment in the Sports Complex. After this new knowledge, Bly represents that he properly supplemented his interrogatory response on December 11, 2013. Despite the fact that Bly has withheld some documents related to

Ruloff's declaration, Rule 37 sanctions are unnecessary in this matter because UFMB has not been prejudiced as they were able to depose Ruloff prior to the trial in this matter. Moreover, UFMB will receive relevant documents from Bly pursuant to this Court's Order granting in part UFMB's Motion to Compel.

Regarding the admissibility of Ruloff's declaration, the Court finds that Ruloff's proposed testimony is relevant and was timely disclosed in a manner not prejudicial to UFMB. UFMB has failed to show that Ruloff's declaration falls outside the scope of Federal Rule of Civil Procedure 56(c)(4). In any event, the Court need not rest its opinion on Ruloff's declaration because Bly's declaration is enough to establish a dispute of a material fact in this matter.

## IV. MOTION TO COMPEL

### A. The Attorney-Client Privilege

Bly refuses to provide UFMB with any responsive documents and asserts that his attorney-client privilege has not been waived with respect to such documents because Ruloff's testimony has nothing to do with legal advice. Federal Rule of Civil Procedure 26(b)(3)(B) states that should a court order the discovery of work product materials, "it must guard against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such opinion work product is absolutely protected from discovery. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992). Accordingly, and because the legal advice of Bly's attorneys is not directly at issue in this matter, any materials containing the legal opinion or theories of Bly's attorneys may be redacted or withheld entirely as needed.

### B. The Work Product Doctrine

Typically, under Rule 26(b)(3)(A), a party may not discover documents that are prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3)(A). However, such materials are discoverable if the party can show that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Sanford v. Virginia*, No. CIV. A. 3:08-CV-835, 2009 WL 2947377, at *3-6 (E.D. Va. Sept. 14, 2009).

The Court finds that UFMB has shown a substantial need for the work product memorializing the 2012 meeting between Bly, his attorneys, and Williams. Williams is a key witness in this matter. Other than Ruloff's word, UFMB has no other means of corroborating the content of Williams's statements to Bly and his attorneys in the 2012 meeting. While UFMB currently has access to Williams, at this late time—within a week of trial—the Court finds that UFMB cannot, without undue hardship, obtain the substantial equivalent of the information it seeks.

Accordingly, the Motion to Compel is hereby GRANTED IN PART and DENIED IN PART. To the extent that they have not already done so, the subpoenaed parties, Robert E. Ruloff, in his individual capacity, Shuttleworth, Ruloff, Swain, Haddad & Morecock, PC, and DurretteCrump, PLC are DIRECTED to produce any documents which have been admitted as being responsive, but not privileged, as well as any documents memorializing the disputed meeting between Plaintiff, Michael Williams, and Ruloff.

## V. CONCLUSION

For the above reasons, the Motion for Summary Judgment is GRANTED as to Count One of the Complaint, and GRANTED IN PART and DENIED IN PART as to Count Two of the

Complaint. The Motion to Exclude is DENIED. The Motion to Compel is hereby GRANTED IN PART and DENIED IN PART.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

/s/
James R. Spencer
United States District Judge

ENTERED this 6th day of February 2014.